**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**PATHWAYS HEALTH AND COMMUNITY SUPPORT LLC d/b/a CLARVIDA,**

**Plaintiff,**

**v.** **Civil Action No. 3:25-cv-671**

**MICHAEL TANG, *et al.*,**

**Defendants.**

# MEMORANDUM OPINION

This matter comes before the Court on *pro se* Defendant Luis Lee's Motion to Dismiss Complaint and Motion for More Definite Statement (the "Motion"), (ECF No. 6). Mr. Lee filed a Memorandum in Support of the Motion, (ECF No. 7). Plaintiff Pathways Health and Community Support LLC d/b/a Clarvida ("Pathways") responded in opposition, (ECF No. 8), and Mr. Lee filed a Reply, (ECF No. 14). The matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. *See* E.D. Va. Loc. Civ. R. 7(J). The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons articulated below, the Court will deny Mr. Lee's Motion, (ECF No. 6).

# I. Factual and Procedural Background

## A. Factual Background[1]

Pathways, a behavioral health services provider headquartered in Fredericksburg, Virginia, brings this action against former employees Michael Tang and Luis Lee. (ECF No. 1 ¶¶ 4–7.) Mr. Lee began working for Pathways as a Senior Financial Analyst in 2019 and later became Treasury Manager. (ECF No. 1-2, at 1–2.) Mr. Tang served as Pathways' Chief Financial Officer and supervised employees within the finance department, including Mr. Lee. (ECF No. 1 ¶¶ 13, 15–16.)[2] Pathways alleges that Mr. Tang and Mr. Lee used their positions in Pathways' finance department to carry out several fraudulent schemes between approximately March 2020 and December 2022.[3] (ECF No. 1 ¶¶ 17–49.)

### 1. The "JKemp" Scheme

Pathways alleges that Mr. Tang and Mr. Lee created and controlled JKemp Consulting LLC ("JKemp"), a fictitious vendor through which they caused Pathways to pay

---

[1] In considering the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Pathways. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[2] The Complaint states that Pathways hired Mr. Tang in November of 2021, (ECF No. 1 ¶ 6), but the Statement of Facts from the associated criminal case attached to the Complaint states that Mr. Tang began working for Pathways in approximately May 2019, (ECF No. 1-2, at 1). The Court addresses this discrepancy in considering Mr. Lee's Motion for a More Definite Statement. *See* Section III.F, *infra*.

[3] Mr. Lee pleaded guilty to Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, in an associated criminal case involving largely the same actions alleged in the present case. He was sentenced to twenty-three (23) months in prison and ordered to pay $1,323,962 in restitution for the crimes perpetrated against Pathways. (*See* Criminal Case No. 3:24-cr-30, ECF Nos. 11, 12, 27, 29 (E.D. Va.).)

Pathways relies on Mr. Lee's guilty plea and accompanying Statement of Facts in opposing the Motion. (ECF No. 8, at 2–6.) Mr. Lee disputes the preclusive effect of those

approximately $1,140,000 for services JKemp never performed. (ECF No. 1 ¶¶ 17–31.) Mr. Lee served as the sole signatory on JKemp's Wells Fargo account, and neither Defendant disclosed their ownership or control of JKemp to Pathways. (ECF No. 1 ¶¶ 21–22.) The Complaint identifies twelve allegedly fraudulent invoices submitted between March 2020 and April 2021 and alleges that Mr. Tang and Mr. Lee divided the proceeds for their personal benefit. (ECF No. 1 ¶¶ 28–31.)

### 2. <u>The Tuition-Reimbursement and Vacation-Payout Schemes</u>

Pathways also alleges that Mr. Tang and Mr. Lee fraudulently obtained approximately $177,962 in tuition reimbursements by falsely representing that Mr. Lee attended Hofstra University's Master of Business Administration program despite his never enrolling. (ECF No. 1 ¶¶ 32–38.) According to the Complaint, Mr. Tang and Mr. Lee prepared and submitted false documentation bearing Hofstra's logo to induce Pathways to reimburse Mr. Lee for educational expenses he did not incur. (ECF No. 1 ¶¶ 34–37.) Pathways claims that it made three $5,250 reimbursement payments between 2020 and 2022 and, on November 29, 2022, made an additional payment of $162,212. (ECF No. 1 ¶ 37.) Pathways further alleges that Mr. Tang and Mr. Lee received approximately $100,829 after taxes from the final transaction and used those funds for their personal benefit. (ECF No. 1 ¶ 38.)

Finally, Pathways asserts that, in April 2022, Mr. Lee submitted a request for approximately $6,000 in purportedly unused vacation time. (ECF No. 1 ¶ 47.) According to Pathways, its vacation policy did not authorize the payment, and Mr. Tang directed another finance department employee to process Mr. Lee's request. (ECF No. 1 ¶ 47.)

---

materials. (ECF No. 14, at 1–4.) As discussed below, *see* Section III.F.2, *infra.*, the Court need not determine their precise preclusive effect to resolve the present Motion.

Pathways states that it discovered the schemes in late November or December of 2022, and suffered approximately $1,658,017 in total losses from the conduct of Mr. Tang and Mr. Lee. (ECF No. 1 ¶¶ 1, 49.)

### B. Procedural Background

On August 25, 2025, Pathways filed its ten-count Complaint against Mr. Tang and Mr. Lee. (ECF No. 1.) Pathways states five of the ten claims against Mr. Lee:

**Count III:** Conversion;

**Count V:** Common Law Civil Conspiracy;

**Count VI:** Statutory Business Conspiracy, Virginia Code §§ 18.2-499 and 18.2-500;

**Count VIII:** Fraud; and

**Count X:** Fraudulent Concealment.

(ECF No. 1 ¶¶ 61–65, 76–89, 95–98, 105–09.)

On September 23, 2025, Mr. Lee, proceeding *pro se*, filed the present Motion to Dismiss Complaint and Motion for More Definite Statement, (ECF No. 6). Mr. Lee seeks dismissal of Count III or, alternatively, to limit any recovery under that Count to amounts attributable to his own conduct and not duplicative of restitution already ordered; dismissal of Counts V and VI; dismissal of claims that rely on conduct attributed to Mr. Tang before his alleged employment date; and dismissal or repleading of Counts VIII and X. (ECF No. 7, at 4–9.) Alternatively, Mr. Lee seeks a more definite statement under Rule 12(e) clarifying the conduct attributable to each Defendant, the relevant chronology, Pathways' damages, and its theory of joint-and-several liability. (ECF No. 7, at 8–9.)

Pathways opposes the Motion. (*See* ECF No. 8.) Mr. Lee filed a Reply, in which he contests the preclusive effect Pathways attributes to his guilty plea. (ECF No. 14, at 1–6.) This action was reassigned to the undersigned on June 22, 2026. (ECF No. 36.)

## II. Legal Standard: Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

## III. Analysis

Mr. Lee challenges each of the five claims Pathways asserts against him.[4] He argues that Count III fails to identify the specific funds he allegedly converted; Counts V and VI fail to plead an actionable underlying wrong, an agreement, or the requisite purpose to injure Pathways' business; and Counts VIII and X do not plead fraud with the particularity Rule 9(b) requires. (ECF No. 7, at 4–7; ECF No. 14, at 4–6.) Alternatively, Mr. Lee seeks a more definite statement under Rule 12(e) on the basis of inconsistencies in the Complaint's chronology and damages allegations. (ECF No. 7, at 6–9; ECF No. 14, at 4, 6.) The Court addresses these arguments in turn. Because both conspiracy claims depend on adequately pleaded underlying torts, the Court first addresses Pathways' conversion, fraud, and fraudulent concealment claims before turning to Counts V and VI.

### A. Pathways States a Claim for Conversion Against Mr. Lee

#### 1. Legal Standard: Conversion

Under Virginia law, conversion constitutes "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; and any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020) (citation omitted). "The tort of conversion can also apply to money[,]" but only when a plaintiff's claim concerns specific and easily identifiable funds over which the defendant allegedly exercised wrongful dominion or

---

[4] Because Mr. Lee proceeds *pro se*, the Court construes his filings liberally. *See Deabreu v. Novastar Home Mortgage, Inc.*, 536 F. App'x 373, 375 (4th Cir. 2013); *Gordon v. Mr. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978).

control. *See Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 914 (W.D. Va. May 5, 2022) (quoting *Grayson v. Westwood Buildings L.P.*, 859 S.E.2d 651, 679 (Va. 2021)). Notably, "proof of damages is not an element of conversion, [but] the measure of damages, as a general rule, is the value of the property converted at the time and the place of conversion." *Kirdassi v. White*, 913 S.E.2d 311, 329 (Va. 2025) (quotations omitted).

**2. Pathways Plausibly Alleges That Mr. Lee Converted Its Funds**

Mr. Lee argues that Pathways fails to identify the particular funds over which he exercised wrongful dominion and instead impermissibly groups his conduct with the conduct of Mr. Tang. (ECF No. 7, at 5–6; ECF No. 14, at 5.) Mr. Lee believes that Count III improperly seeks to hold him liable for Pathways' entire alleged loss without distinguishing the amount attributable to his conduct from the amount attributable to Mr. Tang. (ECF No. 7, at 5–6.)

But the Complaint identifies specific funds and conduct attributable to Mr. Lee. (*See* ECF No. 1 ¶¶ 21, 28, 30–31, 35–38, 47.) As to the JKemp scheme, Pathways notes that Mr. Lee (1) exercised control over the fictitious vendor; (2) served as the sole signatory on JKemp's Wells Fargo account; (3) participated in the submission and processing of twelve fraudulent invoices totaling approximately $1,140,000; and, (4) received a portion of such proceeds for his personal benefit. (ECF No. 1 ¶¶ 17–31.) Pathways separately alleges that it paid approximately $177,962 in fraudulent tuition reimbursements to Mr. Lee and approximately $6,000 for an unauthorized vacation payout requested by Mr. Lee. (ECF No. 1 ¶¶ 32–38, 47.) Taken as true, these allegations demonstrate exactly what a conversion claim for money under Virginia law requires: specific funds over which Mr. Lee exercised dominion inconsistent with Pathways' rights. *See Student A*, 602 F. Supp. 3d at 914.

The discrepancy between the amounts identified in the Complaint and the amount Pathways ultimately seeks from Mr. Lee does not require dismissal. Proof of damages does not constitute an element of conversion, and is therefore not required to survive a motion to dismiss. *See Kirdassi*, 913 S.E.2d at 329. Whether Pathways can ultimately establish entitlement to the full amount of damages it requests presents a different question from whether Pathways plausibly alleges that Mr. Lee converted identifiable funds. At this stage, Pathways does so, and the Court will deny the Motion to Dismiss as to Count III.

### B. Pathways States a Claim for Fraud Against Mr. Lee

#### 1. Legal Standard: Fraud and Rule 9(b)

Under Virginia law, actual fraud requires "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage[.]" *Thompson v. Bacon*, 425 S.E.2d 512, 514 (Va. 1993).

Because Pathways asserts its Virginia fraud claim in federal court, the claim also must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *See* Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999). Federal Rule of Civil Procedure 9(b) further requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).[5] A plaintiff ordinarily must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [the person] obtained thereby." *Harrison*, 176 F.3d at 784. These circumstances commonly amount to the standard "who, what, when, where,

[5] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

and how" of the alleged fraud. *See United States ex rel. Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472, 485 (4th Cir. 2025) (quotations omitted).

**2. Pathways Pleads Fraud Against Mr. Lee with Sufficient Particularity**

Mr. Lee argues that Counts VIII and X impermissibly group his own conduct with Mr. Tang's and fail to identify the particular statements, transactions, or amounts attributable to him. (ECF No. 7, at 6–7; ECF No. 14, at 5.) Mr. Lee contends that such collective pleading obscures the specific fraudulent acts Pathways attributes to him individually. (ECF No. 7, at 6–7; ECF No. 14, at 5.) But the Complaint does not rely solely on collective allegations; it identifies specific fraudulent conduct and resulting payments attributable to Mr. Lee.

The Complaint identifies three categories of allegedly fraudulent conduct involving Mr. Lee. First, Pathways alleges that Mr. Lee served as the sole signatory on the fictitious JKemp Wells Fargo account, concealed his ownership and control of JKemp, participated in the submission and processing of twelve fraudulent invoices totaling approximately $1,140,000, and divided the resulting proceeds with Mr. Tang. (ECF No. 1 ¶¶ 21–22, 28–31.) Further, Pathways alleges that Mr. Lee presented false documentation seeking tuition reimbursement, despite never enrolling in Hofstra University's MBA program, resulting in three $5,250 payments and an additional payment of $162,212. (ECF No. 1 ¶¶ 34–38.) Finally, Pathways alleges that Mr. Lee requested approximately $6,000 for purportedly unused vacation time even though Pathways' company policy did not authorize the payment. (ECF No. 1 ¶ 47.)

Count VIII incorporates these allegations and states that Mr. Lee "misrepresented receipts, vendor contracts, reimbursement requests, and other financial documents" to induce Pathways to process payments for his personal benefit. (ECF No. 1 ¶¶ 95–96.) Pathways further alleges that it relied on those misrepresentations and suffered resulting financial loss. (ECF

No. 1 ¶¶ 97–98.) Taken together, these allegations identify Mr. Lee as a participant in the alleged fraud, describe the substance and means of the alleged misrepresentations, identify when the relevant transactions occurred and the amounts paid, and explain what Mr. Lee allegedly obtained as a result—providing the "who, what, when, where, and how" necessary to satisfy Rule 9(b). *See Harrison*, 176 F.3d at 784; *Wheeler*, 127 F.4th at 485.

Pathways' broader damages allegations do not alter this conclusion. Rule 9(b) requires particularity as to "the circumstances constituting fraud" and the Complaint identifies the transactions underlying Count VIII with sufficient specificity. Fed. R. Civ. P. 9(b). This does not require a perfect or itemized damages request at the pleading stage. Any inconsistency concerning the amount Pathways ultimately may recover does not render those allegations deficient under Rule 9(b). The Court will therefore deny the Motion as to Count VIII.

### C. Pathways States a Claim for Fraudulent Concealment Against Mr. Lee

#### 1. Legal Standard: Fraudulent Concealment and Rule 9(b)

Under Virginia law, fraud by omission, commonly called "fraudulent concealment," is a species of actual fraud. *TC Tech Mgt. Co. v. Geeks on Call America, Inc.*, No. 2:03-cv-714 (FBS), 2004 WL 5154906, at *5 (E.D. Va. Mar. 24, 2004). Its elements generally mirror those of actual fraud, except that "concealment of a material fact may constitute the element of misrepresentation." *TC Tech Mgt.*, 2004 WL 5154906, at *5; *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994)). Thus, a plaintiff asserting fraudulent concealment must plausibly allege (1) the concealment of a material fact; (2) undertaken knowingly and with the intent to mislead; (3) reasonable reliance on that concealment; and, (4) resulting damage. *See Van Deusen*, 441 S.E.2d at 209–10; *see also Thompson*, 425 S.E.2d at 514.

Because fraudulent concealment sounds in fraud, it also must satisfy Rule 9(b)'s heightened pleading requirement. *See Harrison*, 176 F.3d at 783–84. Although knowledge, intent, and other conditions of mind may be alleged generally, Pathways must plead the circumstances constituting the alleged concealment with sufficient particularity to identify the fraudulent conduct for which Mr. Lee must prepare a defense. *See* Fed. R. Civ. P. 9(b); *Harrison*, 176 F.3d at 784.

### 2. **Pathways Pleads Fraudulent Concealment Against Mr. Lee With Sufficient Particularity**

Mr. Lee raises substantially the same particularity challenge to Count X that he raises against Count VIII. (ECF No. 7, at 6–7; ECF No. 14, at 5.) That challenge founders because Count X incorporates specific allegations identifying what Mr. Lee allegedly concealed and how he allegedly concealed it.

Pathways alleges that Mr. Lee and Mr. Tang concealed the true nature of JKemp from the company—as well as their personal ownership—in order to benefit from fraudulent invoices and diverted company funds. (ECF No. 1 ¶¶ 21–22, 25–31.) Pathways also asserts that Mr. Lee and Mr. Tang concealed Mr. Lee's non-enrollment in Hofstra University's MBA program from the company by submitting fabricated documentation in order to obtain tuition reimbursements. (ECF No. 1 ¶¶ 34–38.) Count X incorporates these allegations and asserts that Mr. Lee concealed the true purpose of the fraudulent vendor and reimbursement documentation to induce Pathways to process the resulting payments, causing Pathways financial loss. (ECF No. 1 ¶¶ 105–09.)

Taken together, these allegations identify the material facts allegedly concealed—the ownership and true purpose of JKemp and the falsity of Mr. Lee's claimed enrollment at Hofstra—as well as the means used to conceal them, the transactions affected, and Pathways'

resulting reliance and loss. These particularized allegations are more than just generalized nondisclosure and sufficiently state the circumstances constituting the alleged concealment. *See* Fed. R. Civ. P. 9(b); *Harrison*, 176 F.3d at 784. The Court will therefore deny the Motion as to Count X.

### D. Pathways States a Claim for Common Law Civil Conspiracy

Having concluded that Pathways plausibly states the underlying tort claims on which Counts V and VI depend, the Court turns to Mr. Lee's challenges to the common law and statutory business conspiracy claims.

#### 1. Legal Standard: Common Law Civil Conspiracy

To state a claim for common law civil conspiracy under Virginia law, a plaintiff must show:

> 1) an agreement between two or more persons; 2) to participate in an unlawful act; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme.

*Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va., Oct. 9, 2009) (cleaned up); *see also Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). Thus, "to survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003).

#### 2. Pathways Plausibly Alleges an Agreement and an Actionable Underlying Wrong

Mr. Lee argues that Pathways' common law conspiracy claim merely repackages the allegations of its fraud and conversion claims and therefore lacks an actionable underlying wrong. (ECF No. 7, at 4–5.) In his Reply, Mr. Lee also contends that Pathways fails to allege an

agreement between him and Mr. Tang. (ECF No. 14, at 5–6.) The Court finds neither argument persuasive.

First, a conspiracy claim is necessarily derivative of other claims, and the fact that Pathways' conspiracy claim is reliant on the facts which underpin its fraud and conversion claims does not warrant dismissal. Pathways need not plead a separate tort apart from the underlying conduct on which the conspiracy claim rests. *See Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (holding that a conspiracy claim remains derivative of the underlying unlawful conduct and therefore "lie[s] only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious").

Further, Pathways pleads facts supporting a reasonable inference of an agreement between Mr. Lee and Mr. Tang. The Complaint alleges that Mr. Lee and Mr. Tang formed and controlled JKemp, obscured their ownership interest, directed the submission of twelve fraudulent invoices to Pathways, and shared the resulting funds received. (ECF No. 1 ¶¶ 17–31.) It also describes additional coordinated acts, including falsified tuition-reimbursement paperwork and an unauthorized vacation payment to Mr. Lee. (ECF No. 1 ¶¶ 32–38, 47.) Taken together, these allegations reflect concerted action in service of a shared scheme, not merely parallel conduct or a bare assertion of conspiracy. *See Steele v. Goodman*, 382 F. Supp. 3d 403, 423–24 (E.D. Va. 2019). Accordingly, the Court will deny the Motion as to Count V.

### E. Pathways States a Claim for Statutory Business Conspiracy

#### 1. Legal Standard: Statutory Business Conspiracy

Virginia law creates a separate civil cause of action against persons who "combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means

whatever." Va. Code § 18.2-499(A).[6] To state a statutory business conspiracy claim, a plaintiff must allege that: (1) the defendant conspired with another to harm the plaintiff; (2) acted with legal malice; and (3) caused the plaintiff to suffer damages. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Co.*, 108 F.3d 522, 526 (4th Cir. 1997); *Steele*, 382 F. Supp. 3d at 423. Like its common law counterpart, a statutory conspiracy claim requires an underlying act that is itself wrongful or tortious. *Dunlap*, 754 S.E.2d at 317.

### 2. <u>Pathways Plausibly Alleges a Statutory Business Conspiracy</u>

Mr. Lee principally argues that Count VI fails because the alleged schemes sought to enrich Mr. Lee and Mr. Tang, rather than to injure Pathways' business. (ECF No. 7, at 4–5; ECF No. 14, at 5–6.) But the Complaint alleges both a self-interested motive and an intent to cause financial harm to Pathways.

Pathways expressly states that Mr. Lee and Mr. Tang agreed to "willfully and maliciously injure" its business by removing company funds, took "calculated steps" to cause Pathways financial harm for their own benefit, and acted with malice and the intent to inflict that harm. (ECF No. 1 ¶¶ 84, 86, 88.) Those allegations are supported by the broader factual narrative, which describes coordinated efforts to divert company funds through the JKemp invoices, fraudulent tuition reimbursements, and an unauthorized vacation payout. (ECF No. 1 ¶¶ 17–47.)

These allegations support the inference that Mr. Lee and Mr. Tang acted together, with legal malice, to injure Pathways' business in furtherance of their scheme. The fact that the Defendants allegedly sought personal enrichment does not defeat the statutory business

[6] Virginia Code § 18.2-500(A) permits a person injured in his or her "reputation, trade, business or profession by reason of a violation of § 18.2-499" to sue and recover treble damages, costs, and reasonable attorney's fees. Va. Code § 18.2-500(A).

conspiracy claim at the pleading stage. *See Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001) (explaining that Virginia Code §§ 18.2-499 and -500 do not require that a conspirator's "primary and overriding purpose" be to injure another's business); *Advanced Marine Enters., Inc. v. PRC Inc.*, 501 S.E.2d 148, 154 (Va. 1998) (same). Whether Pathways can ultimately prove the requisite purpose and malice presents a merits question. The Court will therefore deny the Motion as to Count VI.

### F. <u>Mr. Lee Is Not Entitled to a More Definite Statement</u>

#### 1. <u>Legal Standard: Rule 12(e)</u>

Federal Rule of Civil Procedure 12(e) permits a party to seek a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Rule "is designed to strike at unintelligibility rather than simple want of detail." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973); *see also Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348–49 (4th Cir. 2005); *Pille v. Kiely*, 1:24-cv-47 (LMB), 2024 WL 4183309, at *1 (E.D. Va. July 19, 2024). Thus, where a complaint satisfies Rule 8 and "is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer," a more definite statement is unwarranted.[7] *Hodgson*, 482 F.3d at 824.

---

[7] Federal Rule of Civil Procedure 8(a) states:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

**2. The Complaint Provides Mr. Lee Sufficient Notice to Prepare a Response**

Mr. Lee asks the Court to require Pathways to clarify the following: (1) the conduct attributable to each Defendant; (2) the chronology of the alleged schemes; (3) the damages sought and their relationship to restitution; and (4) whether Pathways seeks joint or several liability. (ECF No. 7, at 8–9; ECF No. 14, at 6.) While the Complaint might contain some imprecision, it does not approach the level of unintelligibility contemplated by Rule 12(e) or fail to satisfy Rule 8. *See Hodgson*, 482 F.2d at 824.

First, the Complaint sufficiently identifies the conduct Pathways attributes to Mr. Lee. As discussed above, Pathways alleges Mr. Lee's specific involvement in each of the challenged schemes and asserts separate conversion, fraud, and fraudulent concealment claims against him. (ECF No. 1 ¶¶ 17–38, 47, 61–65, 95–98, 105–09.) Those allegations provide Mr. Lee sufficient notice of the conduct to which he must respond.

Second, the discrepancy concerning Mr. Tang's employment date does not render the Complaint unintelligible. The Complaint states that Pathways hired Mr. Tang in November of 2021, while allegations elsewhere in the Complaint—as well as the Statement of Facts in the associated criminal case—describe Mr. Tang's involvement in tortious conduct beginning in 2020. (ECF No. 1 ¶¶ 6, 17–31.) In its opposition brief, Pathways identifies the misstated November 2021 date as a drafting error, and an exhibit attached to the Complaint provides an earlier employment date. (ECF No. 8, at 11–12; *see also* ECF No. 1-2, at 1.) Whatever effect this discrepancy ultimately may have on Pathways' proof, it does not prevent Mr. Lee from understanding the conduct Pathways alleges against him.

Third, Pathways' damages allegations contain an apparent tension, but they do not prevent Mr. Lee from preparing a response. Pathways alleges approximately $1,658,017 in total

losses arising from the Defendants' conduct, while Counts VIII and X state that "over $1.4 million" was improperly paid to Mr. Lee. (ECF No. 1 ¶¶ 1, 98, 109.) Pathways identifies the principal transactions underlying its claimed losses, including the $1,140,000 JKemp scheme, the $177,962 tuition-reimbursement scheme, and the approximately $6,000 vacation payment attributed to Mr. Lee. (ECF No. 1 ¶¶ 17–38, 47.) Questions concerning the allocation of those damages, the availability of joint and several liability, or any potential duplication of recovery may be addressed on a more developed record. They do not make the Complaint so vague that Mr. Lee cannot answer it.

Finally, the parties devote substantial briefing to the effect of Mr. Lee's guilty plea. Pathways argues that Mr. Lee's plea and Statement of Facts preclude him from disputing facts established in the associated criminal proceeding. (ECF No. 8, at 2–6.) Mr. Lee contests the application and scope of collateral estoppel. (ECF No. 14, at 1–4.) The Court need not resolve that disagreement to decide the present Motion for a More Definite Statement. The allegations contained in the Complaint itself provide Mr. Lee with sufficient information to prepare a response. The Court therefore does not rely on the preclusive effect of Mr. Lee's criminal proceeding in denying the Motion and expresses no view at this stage as to the precise preclusive effect of his guilty plea or accompanying Statement of Facts.

Rule 12(e) addresses unintelligibility, not a demand for additional detail. *Hodgson*, 482 F.2d at 824. Because the Complaint provides Mr. Lee with sufficient notice of the claims and conduct asserted against him, the Court will deny the Motion for More Definite Statement.

## IV. Conclusion

For the foregoing reasons, the Court will deny Mr. Lee's Motion to Dismiss Complaint and Motion for More Definite Statement, (ECF No. 6).

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 8/31/26
Richmond, Virginia